G

**DISTRICT ATTORNEY**

COUNTY OF NEW YORK

ONE HOGAN PLACE

New York, N. Y. 10013



CYRUS R. VANCE, JR.

DISTRICT ATTORNEY

April 4, 2017

The Honorable Daniel J. FitzGerald
New York County Supreme Court
Criminal Term, Part 65
111 Centre Street, Room 572
New York, New York 10013

Re: People v. Willy Ulerio
NY County Indictment No. 5149/2007

Dear Justice FitzGerald:

On behalf of the New York County District Attorney's Office, I write to inform the Court that the People consent in the interests of justice to the entry of an order granting defendant's motion, pursuant to Criminal Procedural Law §330.30, to set aside a 2009 jury verdict convicting him of Criminal Possession of a Weapon in the Second Degree (Penal Law §265.03[3]) and Criminal Possession of Marihuana in the Fourth Degree (Penal Law §221.15). Moreover, given the unusual circumstances of the case, we ask the Court to treat defendant's motion as if made pursuant to CPL §440.10 and accept the People's recommendation to vacate the conviction and dismiss the indictment.

The facts of this case as adduced at trial have been recited extensively in the prior submissions relevant to this motion. The evidence at trial established that on October 10, 2007, defendant possessed a loaded firearm outside his home or place of business and more than two ounces of marijuana. In a nutshell, on that date, Sergeant William Eiseman and Police Officers Michael Carsey, Armando Perez, and Euris Paulino were driving back to their precinct when they observed the defendant's van double-parked, with the defendant in the driver's seat and another man in the front passenger seat. After pulling the police car alongside defendant's van, the officers detected a strong odor of marijuana emanating from the van. In the course of the ensuing police investigation, Police Officer Perez shined his flashlight into the window of the van and observed a cereal box with a large Ziplock containing what was determined to be marijuana sticking halfway out of the box. The defendant and his passenger were placed under arrest. Police Officer Perez then conducted a search of the van, during which he recovered a loaded black pistol from inside a compartment located behind the driver's seat.

Procedural History

On October 10, 2007, defendant was arrested and was thereafter charged by an indictment filed on October 31, 2007, with Criminal Possession of a Weapon in the Second Degree (intent to use unlawfully) (Penal Law §265.03[1][b]), Criminal Possession of a Weapon in the Second Degree (outside home or place of business) (Penal Law §265.03[3]), Criminal Possession of a Weapon in the Third Degree (Penal Law §265.02[3]), and Criminal Possession of Marihuana in the Fourth Degree (Penal Law §221.15). On May 21, 2008, a suppression hearing was conducted before the Honorable Robert Straus at which Police Officer Armando Perez testified for the People. Judge Straus denied the motion to suppress. On March 4, 2009, defendant proceeded to a jury trial before Your Honor. At trial, the principle witnesses for the People were Police Officers Perez and Paulino. Police Officer Carsey also testified: he had a limited memory of the relevant facts but established the chain of custody for the admission of the physical evidence. Sergeant Eiseman was not called as a witness. On March 11, 2009, the jury found defendant guilty of Criminal Possession of a Weapon in the Second Degree (outside home or place of business) and Criminal Possession of Marihuana in the Fourth Degree, the only counts submitted for its consideration. The case was adjourned to April 25, 2009 for sentencing.

After the verdict but prior to the imposition of sentence, the assistant district attorney who tried the case was informed by her supervisors that the sentencing needed to be delayed. On October 15, 2010, that assistant district attorney informed the Court and defense counsel that two officers involved in defendant's arrest, Sergeant Eiseman and Police Officer Carsey, had been indicted on various charges including perjury, filing false reports, and official misconduct.[1] On or about November 18, 2011, defendant moved through newly-assigned counsel to set aside the verdict pursuant to CPL §330.30 on the ground of newly discovered evidence, i.e., the impeachment material relating to the indictment of both officers. In a supplemental submission, counsel also argued that the People's failure to disclose this information amounted to a Brady/Giglio violation.

On September 29, 2012, after written submissions by both sides and the presentation by the People of a timeline of the investigation into Sergeant Eiseman's misconduct, this Court denied defendant's motion.[2] On November 9, 2012, defendant was sentenced on the weapon charge to a determinate prison term of five years to be followed by three years of post-release

---

[1] By New York County Indictment No. 2999/2010, filed on June 30, 2010, Sergeant William Eiseman was charged with two counts of Perjury in the First Degree, four counts of Offering a False Instrument for Filing in the First Degree, one count of Tampering with Physical Evidence, and six counts of Official Misconduct stemming from four separate arrests unrelated to defendant's case. By New York County Indictment No. 2998/2010, filed on June 30, 2010, Police Officer Michael Carsey was charged with three counts of Perjury in the First Degree, one count of Offering a False Instrument for Filing in the First Degree, and one count of Official Misconduct stemming from the arrest of Antoine Melville.

[2] The timeline that was provided to the Court consisted of a number of dates and events that occurred in the course of the investigation of Sergeant Eiseman, including the date of March 26, 2009, when an Office notification was sent to the bureau chiefs about the investigation concerning Sergeant Eiseman. Based on that timeline, Your Honor concluded that the allegations against Sergeant Eiseman were not substantiated until March 26, 2009, after defendant's trial. It now appears that some allegations of misconduct by Sergeant Eiseman were at least partially substantiated earlier than the date of the Office notification. The allegations against Police Officer Carsey did not surface until May 2009.

2

supervision and a definite term of six months in jail on the charge of marihuana possession. The definite sentence merged with the state prison sentence by operation of law.

Defendant appealed his conviction to the Appellate Division, First Department claiming, among other things, that this Court had erred in denying his CPL §330.30 motion. After oral argument, the Appellate Division remanded the case for a hearing to further develop the factual basis for the denial of defendant's motion. Specifically, the Appellate Division sought additional factual information regarding "what the assigned prosecutor and the District Attorney's Office knew about the veracity of the perjury complaint prior to the conclusion of defendant's trial." People v. Ulerio, 137 A.D.3d 629, 630 (1st Dept. 2016). The Appellate Division added that, during the hearing, defendant could also "clarify what information, if any, was shared between the corruption unit and the assigned prosecutor before defendant's trial and whether, prior to the date referenced by the motion court, the People had specific information that the sergeant and the officer had engaged in misconduct which they should have disclosed... [and] whether the District Attorney's investigation of the alleged perjury extended in any way, to the stop of the defendant." Id.

In preparation for that hearing and in accordance with the directives of the Appellate Division, the People have re-examined the files related not only to defendant's case, but also to the investigation and indictments of both Sergeant Eiseman and Police Officer Carsey. Our review of events leading up to the indictment of Sergeant Eiseman consisted, among other things, of interviews with the assistant district attorney who tried defendant's case, as well as current and former members of the District Attorney's Office involved in the corruption investigation, including members of the Official Corruption Unit. We also examined the paperwork contained in the Official Corruption Unit's case file (including interview notes, grand jury minutes, discovery and Rosario materials, and case evaluations/notations for other cases the officers were involved in) and the corresponding New York City Police Department Internal Affairs case file on this investigation (including investigating officer's reports and supporting documentation). That review revealed that the District Attorney's Office had knowledge of the bad acts of Sergeant Eiseman prior to the commencement of defendant's trial but that, in view of the sensitive nature of the ongoing investigation, information about the investigation had not been shared office-wide at the time of defendant's trial. Had Sergeant Eiseman testified at defendant's trial, the non-disclosure of such information would have been error. By contrast, the People did not have knowledge of any misconduct by Police Officer Carsey – who did testify at defendant's trial – until several months after defendant's conviction.

The Investigation into Misconduct by Sergeant Eiseman and Police Officer Carsey

At the time of defendant's trial, members of the District Attorney's staff were in possession of the following information with respect to Sergeant Eiseman:

- In July of 2008, Sergeant Eiseman was the supervising officer on the arrest of Richard Rodriguez (the Rodriguez incident) in which Sergeant Eiseman and other members of his

3

team observed Rodriguez driving with an open container of alcohol in the car.[3] Upon stopping the car, the officers removed Rodriguez and the passenger. The police searched the car at the scene and recovered a plastic bag containing over four ounces of cocaine. The arresting officer originally reported that the drugs had been recovered pursuant to an inventory search conducted back at the precinct. However, when the arresting officer appeared at the District Attorney's Office to testify before the Grand Jury a week after the arrest, he confided that the search had actually occurred at the location of the stop, and that Sergeant Eiseman had ordered the officer to lie about the circumstances of the recovery of the drugs. In December of 2008, each of the officers involved in Rodriguez's arrest was re-interviewed. Rodriguez was then interviewed by members of the Official Corruption Unit in late February of 2009, and Rodriguez corroborated the arresting officer's account of the on-the-scene search of the car at the scene, rather than pursuant to an inventory search as originally reported by the officers.

- On or about August 2, 2008, the New York City Police Department's Internal Affairs Bureau received an anonymous call reporting that Sergeant Eiseman was committing perjury with respect to arrest situations and that he was ordering his officers to lie about the circumstances of those arrests or face work-related consequences.

- On or about January 16, 2009, a police officer working under Sergeant Eiseman's supervision reported to members of the Official Corruption Unit that Sergeant Eiseman ordered him to engage in improper conduct regarding the arrest of Terry Boyd on or about July 17, 2008 ("The Boyd Incident").[4] Specifically, Sergeant Eiseman ordered the police officer to issue a criminal summons after Sergeant Eiseman stopped two African-American men, brought them to the precinct, and vouchered a large sum of money for forfeiture. The police officer, believing that the men had done nothing wrong, refused to issue the summons. Sergeant Eiseman then filled out the summons himself and signed the police officer's name to it.

- On or about January 21, 2009, a police officer working under Sergeant Eiseman's supervision reported to members of the Official Corruption Unit that Sergeant Eiseman ordered him to state that he had recovered a quantity of marijuana from a defendant when, in fact, Sergeant Eiseman had recovered the marijuana himself and the police officer had neither recovered any marijuana nor been present at the time of the arrest. When that police officer refused to comply with Sergeant Eiseman's demand, Sergeant Eiseman assigned the arrest to a second police officer and had that second police officer say that the original police officer recovered the marijuana. Thereafter, the original police officer refused to sign the supporting deposition. On or about January 29, 2009, the second police officer confirmed this account of events.

---

[3] Sergeant Eiseman's actions regarding the stop and search of Richard Rodriguez, listed under the heading "The Rodriguez Incident," constitute the basis for counts 5 through 7 of Indictment No. 2999/2010.
[4] Sergeant Eiseman's actions in regards to the stop and search of Terry Boyd, listed under the heading "The Boyd Incident," constitute the basis for counts 8 through 12 of Indictment No. 2999/2010.

4

Defendant Ulerio's trial commenced on March 4, 2009, after the events detailed above regarding the investigation into Sergeant Eiseman. On the other hand, at the time of defendant Ulerio's trial, neither the New York City Police Department's Internal Affairs Bureau nor the New York County's District Attorney's Office were aware of any specific allegations of misconduct by Police Officer Carsey. It was not until May 2009, that the first incident with specific allegations of misconduct by Police Officer Carsey came to light.

More specifically, in May, 2009, Antoine Melville was interviewed regarding his arrest on August 20, 2007.[5] Sergeant Eiseman, Police Officer Carsey and another officer stopped Melville's car. Melville claimed that there was no odor of marijuana emanating from his person or his car, but Sergeant Eiseman nevertheless removed him from his car and searched both the car and Melville's person. After being told that he would not be arrested for possessing just a marijuana cigarette, Melville produced the cigarette he had in his waistband and dropped it to the ground, as directed by Sergeant Eiseman. Melville was placed under arrest and transported back to the precinct, along with his car. At the precinct, Melville asked for his cell phone to make a phone call. When Police Officer Carsey returned with the cell phone, Melville could see that Police Officer Carsey was looking through the contents of the phone without Melville's consent. Melville was then brought to an interview room, where Sergeant Eiseman began searching through Melville's phone, again without his consent, showing him pictures of guns and drugs on the phone and accusing Melville of having those items in his apartment. Melville repeatedly stated that the photographs were images he had gotten from the internet and denied that such property was in his apartment. The officers left, and Melville learned in the morning that the officers had executed a search warrant on his apartment and recovered guns, drugs and cash. The relevant vouchers listed the value of the money recovered from the safe as being far less than what Melville reported had been stored there.

A review of the application for the search warrant sworn to by Police Officer Carsey revealed that Police Officer Carsey requested to search Melville's phone, car and home. In support of his showing of probable cause, Police Officer Carsey claimed that he saw Melville erasing images from his cell phone while using it at the precinct; that Carsey was able to see images of guns and drugs on the phone while Melville used it; and that Melville acknowledged that the images were of his apartment.

On June 30, 2010, indictments were filed against both Sergeant Eiseman and Police Officer Carsey. On October 15, 2010, the assistant district attorney who tried defendant's case formally notified the Court and defense counsel of the indictment of both officers.

In the course of the investigations of Police Officer Carsey and Sergeant Eiseman, defendant Ulerio's case was reviewed by the Official Corruption Unit of the New York County's District Attorney's Office. That review revealed that a post-arrest interview of the man arrested with defendant corroborated the officers' account of the stop, specifically with respect to the detectable odor of marijuana emanating from defendant's vehicle, and that the assistant district

---

[5] Sergeant Eiseman's actions in connection with the arrest of Antoine Melville, listed under the heading "The Melville Incident," constitute the basis for counts 1 through 4 of Indictment No. 2999/2010. Police Officer Carsey's actions regarding the arrest of Antoine Melville constitute the basis for all counts of Indictment No. 2998/2010.

attorney who ultimately tried the case had found the main officer, Police Officer Perez, to be credible. Moreover, in the course of their investigation of Sergeant Eiseman and Police Officer Carsey, the Official Corruption Unit did not learn of misconduct by Police Officer Perez or Police Officer Paulino, nor of any allegations of misconduct related to defendant Ulerio's case.

Disclosure and Materiality of Police Officer Carsey's and Sergeant Eiseman's Misconduct

At trial, the principle witnesses against the defendant were Police Officers Armando Perez and Police Officer Euris Paulino. Police Officer Carsey also testified although, as indicated below, he had only a sparse recollection of the car stop. Sergeant Eiseman did not testify. The defense did not present any witnesses. The defense argued in opening and closing statements that the gun belonged to the car's passenger and that, although the officers were truthful about what they had observed, they did not see that the passenger had hidden the gun in the compartment behind the driver's seat where the defendant was seated.

Had Sergeant Eiseman testified at defendant's trial, there is no question that members of the District Attorney's staff had knowledge sufficient to trigger a disclosure obligation about his prior bad acts. The information would have been important impeachment material. Sergeant Eiseman did not testify, and his credibility was, therefore, not placed at issue at the trial. The question remains, however, whether, given the nature of the ultimate allegations against Sergeant Eiseman, the information would have been relevant to the testimony of the other officers in this case – an issue which would have been left to the discretion of the Court.

The information regarding Police Officer Carsey's bad acts did not come to light until several months after defendant Ulerio's conviction. At the time of defendant Ulerio's trial, the People did not have knowledge sufficient to trigger any disclosure obligation regarding Police Officer Carsey's conduct. Although Police Officer Carsey did testify at defendant Ulerio's trial, to the extent that he was able to recall the events of defendant Ulerio's case, his testimony corroborated that of the principle witness, Police Officer Perez, and added only the new facts about how the evidence recovered by other police officers was vouchered. Nonetheless, with the benefit of hindsight and knowledge of what was later learned of Carsey's misconduct, his involvement in the case and lapse of memory at defendant's trial are troubling, particularly given the role of Sergeant Eiseman as the supervising officer at the scene of defendant's arrest, and the defense arguments at trial.

The Defense at Trial

As noted above, the defense at trial was that the gun belonged to the passenger of defendant's car and that the police, although being truthful about what they observed, had failed to see the passenger in the van hide the gun in the compartment behind defendant's seat. Defense counsel argued in his opening statement that the police were honest and trustworthy, that they were going to go before the jury and "tell ... the truth about what they know," and that the jury could "rely upon the police in this case, which is a very significant thing in a criminal case" (T: 31-32, 38).[6]

---

[6] Numerical references preceded by "T" are to the transcript of defendant Ulerio's trial.

attorney who ultimately tried the case had found the main officer, Police Officer Perez, to be credible. Moreover, in the course of their investigation of Sergeant Eiseman and Police Officer Carsey, the Official Corruption Unit did not learn of misconduct by Police Officer Perez or Police Officer Paulino, nor of any allegations of misconduct related to defendant Ulerio's case.

Disclosure and Materiality of Police Officer Carsey's and Sergeant Eiseman's Misconduct

At trial, the principle witnesses against the defendant were Police Officers Armando Perez and Police Officer Euris Paulino. Police Officer Carsey also testified although, as indicated below, he had only a sparse recollection of the car stop. Sergeant Eiseman did not testify. The defense did not present any witnesses. The defense argued in opening and closing statements that the gun belonged to the car's passenger and that, although the officers were truthful about what they had observed, they did not see that the passenger had hidden the gun in the compartment behind the driver's seat where the defendant was seated.

Had Sergeant Eiseman testified at defendant's trial, there is no question that members of the District Attorney's staff had knowledge sufficient to trigger a disclosure obligation about his prior bad acts. The information would have been important impeachment material. Sergeant Eiseman did not testify, and his credibility was, therefore, not placed at issue at the trial. The question remains, however, whether, given the nature of the ultimate allegations against Sergeant Eiseman, the information would have been relevant to the testimony of the other officers in this case – an issue which would have been left to the discretion of the Court.

The information regarding Police Officer Carsey's bad acts did not come to light until several months after defendant Ulerio's conviction. At the time of defendant Ulerio's trial, the People did not have knowledge sufficient to trigger any disclosure obligation regarding Police Officer Carsey's conduct. Although Police Officer Carsey did testify at defendant Ulerio's trial, to the extent that he was able to recall the events of defendant Ulerio's case, his testimony corroborated that of the principle witness, Police Officer Perez, and added only the new facts about how the evidence recovered by other police officers was vouchered. Nonetheless, with the benefit of hindsight and knowledge of what was later learned of Carsey's misconduct, his involvement in the case and lapse of memory at defendant's trial are troubling, particularly given the role of Sergeant Eiseman as the supervising officer at the scene of defendant's arrest, and the defense arguments at trial.

The Defense at Trial

As noted above, the defense at trial was that the gun belonged to the passenger of defendant's car and that the police, although being truthful about what they observed, had failed to see the passenger in the van hide the gun in the compartment behind defendant's seat. Defense counsel argued in his opening statement that the police were honest and trustworthy, that they were going to go before the jury and "tell ... the truth about what they know," and that the jury could "rely upon the police in this case, which is a very significant thing in a criminal case" (T: 31-32, 38).[6]

---

[6] Numerical references preceded by "T" are to the transcript of defendant Ulerio's trial.

In his summation, defense counsel again reiterated that the jury could trust the police in this case because they were "decent officer[s]" who were not "looking to make trouble for people" (T: 286). Counsel went on to argue that "there is no claim in here that these [officers] are up there running wild. They're very decent, experienced officers who you… are going to have to take on their word because there are statements that are made here under oath" (T:291). Although counsel highlighted inconsistencies in the police testimony, emphasized Police Officer Carsey's failure to recall or admit to the specific details of the stop or defendant's statement, and pointed out the absence of Sergeant Eiseman as a witness, he conceded that "[nobody was] out there lying" (T:312).

Conclusion

Given the passage of time, it has been impossible to pinpoint with sufficient accuracy, the precise dates on which the People became privy to founded allegations of misconduct by either Sergeant Eiseman or Police Officer Carsey. We feel confident, however, that the allegations set forth in the bullet points reflect information known to assistant district attorneys in the Office's Official Corruption Unit prior to defendant Ulerio's trial. It bears note that the investigation into Sergeant Eiseman's activities by members of that unit was ongoing throughout that period but remained cloaked due to its sensitive nature and the need to corroborate each allegation as it came to light. The investigation into Police Officer Carsey did not begin until after defendant Ulerio had been convicted at trial.

Moreover, the People's examination of the files has not found evidence of bad faith on the part of the assistant district attorney who tried this case or that any information was withheld with the intent to deprive defendant of a fair trial. The assistant district attorney who tried the case was not notified of the above detailed information at the time of defendant's trial.

Nevertheless, with the benefit of 20-20 hindsight and taking note of the unusual – almost unique – defense strategy at trial, the People believe that fundamental fairness warrants vacating defendant's conviction. Of the many trials that occur in New York County every year, it is highly unusual to find one in which the defense makes an affirmative point of lauding the integrity of the police officers involved in the case. That concession is troubling, to say the least, in a case where two of the four officers responsible for the arrest of the defendant, including the supervising sergeant, were ultimately convicted of perjury, albeit in unrelated cases. Had the mounting allegations against Sergeant Eiseman been known to the defense at the time of the trial, counsel may well have pursued a different tactic in defending his client. There is no way of knowing whether that alternative strategy would have succeeded – and indeed, it may not have. But given the unique facts of this case, the District Attorney's Office believes that counsel should have had that chance.

Accordingly, we are persuaded that the fair course of action is to consent to the vacatur of defendant's conviction. Moreover, given the circumstances set forth above, the passage of time, and the fact that defendant has already served a prison sentence of 5 years for this crime, the interests of justice would not be served by a re-trial. Should the Court vacate defendant's conviction, the People respectfully recommend that indictment number 5149/2007 be dismissed.

Sincerely,

Amy Hare
Assistant District Attorney
212-335-9616

Approved:

William Darrow
Assistant District Attorney
Conviction Integrity Program

Cc: Ben Weiner, Esq.