

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WILLY ULERIO,

       Plaintiff,

  -against-

CITY OF NEW YORK, POLICE OFFICER
MICHAEL CARSEY, POLICE OFFICER
ARMANDO PEREZ, POLICE OFFICER EURIS
PAULINO, and SGT. WILLIAM EISEMAN,
*individually and in their official capacities,*

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

18 Civ. 2155 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Willy Ulerio brings this action pursuant to 42 U.S.C. § 1983, alleging that

Defendant City of New York (the "City") and four officers of the New York City Police

Department ("NYPD"), Defendants Michael Carsey, Armando Perez, Euris Paulino, and William

Eiseman (collectively, the "Officer Defendants") violated his constitutional rights. (*See* Compl.,

ECF No. 4.) The alleged violations stem from the Officer Defendants' search of Plaintiff's van

and the arrest and subsequent prosecution of Plaintiff. (*See id.*) Defendants move to dismiss

Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure. (ECF Nos. 21, 37.) Defendants' motions are GRANTED.

## I. FACTUAL BACKGROUND

On October 10, 2007, Plaintiff was sitting in his parked van with a friend when the Officer

Defendants approached in a police car and flicked its lights. (Compl. ¶¶ 23–26, 28.) As the police

car drove alongside the van, Perez claimed there was a strong smell of marijuana coming from the van's open passenger window.[1]  (*Id.* ¶ 27.)

After Perez claimed to smell marijuana, the police car stopped and the Officer Defendants got out and approached the van.  (*Id.* ¶ 28.)  Carsey and Paulino stood on the driver's side near where Plaintiff was sitting.  (*Id.*)  Perez and Eiseman stood on the passenger's side near Plaintiff's friend.  (*Id.*)

Perez claimed that, while standing behind Eiseman, he observed an open black plastic bag on the floor between the front seats of the van.  (*Id.* ¶¶ 29–30.)  Perez also claimed that the plastic bag contained a "whole bunch" of "apple baggies," one-inch square baggies with an apple printed on them that are used for packaging marijuana.  (*Id.* ¶ 31.)

Perez shined his flashlight into the van and claimed that he could see a zip-lock bag filled with marijuana sticking out of a cereal box lying in the back of the van.  (*Id.* ¶¶ 32–33.)  When Perez told Eiseman what he saw, Eiseman ordered Plaintiff and Plaintiff's friend to get out of the van and arrested them.  (*Id.* ¶ 35.)  Perez then proceeded to search the van and noticed a compartment that was falling apart but had a snap on it.  (*Id.* ¶ 37.)  When Perez opened the compartment, he saw a loaded gun.  (*Id.*)  Perez called Eiseman over and Eiseman secured the gun. (*Id.* ¶ 38.)

---

[1] In his opposition to this motion, Plaintiff asserts that Perez's claim was false, and that the "marijuana . . . was sealed in a plastic bag."  (Mem. in Supp. of Pl. Opp'n to Defs. Mot. to Dismiss ("Opp'n"), ECF No. 27, at 11.)  However, no such allegation appears in the complaint, and "it is 'axiomatic that the [c]omplaint cannot be amended by briefs in opposition to a motion to dismiss.'"  *Troy v. City of New York*, No. 13 Civ. 5082 (AJN), 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014) (citation and internal quotation marks omitted), *aff'd*, 614 F. App'x 32 (2d Cir. 2015).

Later that day, Carsey filed a criminal complaint against Plaintiff and Plaintiff's friend. (*Id.* ¶ 40; *see also id.*, Ex. D ("Crim. Compl."), ECF No. 4-4.[2]) The criminal complaint states, among other things, that Carsey "observed . . . Ulerio in the driver's seat and [Plaintiff's friend] in the passenger['s] seat of [a] van" that was "double parked." (Crim. Compl. at 1.) The criminal complaint also states that Carsey was "informed by Police Officer Perez . . . that [Perez] recovered a fully loaded revolver from the driver['s] side, and a bag containing more than 16 ounces of marijuana from [the] floor of said van." (*Id.*)

On October 31, 2007, Plaintiff was indicted on charges of criminal possession of a weapon in the second and third degrees and criminal possession of marijuana in the fourth degree. (Compl., Ex. G ("Apr. 4, 2017 Letter"), ECF No. 4-7, at 2.) Plaintiff subsequently moved to suppress the evidence uncovered during the search of his van, and a suppression hearing was held on March 21, 2008.[3] (Compl. ¶ 41; Apr. 4, 2017 Letter at 2.) Perez was the only officer who testified at the hearing. (Compl. ¶ 42.) After the hearing, the motion to suppress was denied. (*Id.* ¶ 47.)

On March 4, 2009, the case proceeded to a jury trial. (*Id.* ¶ 48.) Perez, Paulino, and Carsey testified. (*Id.* ¶ 49.) At trial, part of defense counsel's strategy was to argue that the gun found in Plaintiff's van belonged to Plaintiff's friend and that the testifying officers, while being truthful about what they observed, had failed to see Plaintiff's friend hiding the gun in the compartment behind Plaintiff's seat. (Apr. 4, 2017 Letter at 6.) Defense counsel stated in his opening that the

---

[2] The criminal complaint and the other exhibits attached to Plaintiff's complaint, as well as documents incorporated into it by reference, may be considered by this Court in deciding the instant motion. *See Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 98 (2d Cir. 2017).

[3] Plaintiff's complaint alleges that the suppression hearing occurred on May 7, 2009. (Compl. ¶ 41.) That appears to be an error, because the complaint alleges that the criminal trial occurred on March 4, 2009. (*Id.* ¶ 48.) A chronology of the case set forth in an April 4, 2017 letter from the New York County District Attorney's Office to the trial court states that the hearing occurred on March 21, 2008. (Apr. 4, 2017 Letter at 2.)

jury could "rely upon the police in this case." (*Id.* (citing Trial Transcript at 31–32, 38, *People v. Ulerio*, Indictment No. 5149/2007 (Sup. Ct. N.Y. Cnty.) ("Trial Tr.")) In his closing, although defense counsel pointed out inconsistencies in the officers' testimony, he also said that they were "decent, experienced officers who you . . . are going to have to take on their word" that "[nobody was] out there lying." (Apr. 4, 2017 Letter at 7 (citing Trial Tr. at 312) (alteration in original).) On March 11, 2009, the jury found Plaintiff guilty of criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03(3), and criminal possession of marijuana in the fourth degree, in violation of New York Penal Law § 221.15.[4] (Compl. ¶ 56; Apr. 4 Letter at 2.)

Prior to Plaintiff's sentencing, on July 15, 2010, the New York County District Attorney's Office issued a press release announcing that Eiseman and Carsey had been indicted on various charges stemming from their involvement in unlawful searches and seizures in Manhattan. (Compl., Ex. F ("Press Release"), ECF No. 4-6, at 1; *see also* Compl. ¶ 60.) The indictments described four incidents involving Eiseman—one of which also involved Carsey—that occurred in 2007 and 2008. (Compl. ¶¶ 61, 63; *id.* Exs. B & C, ECF Nos. 4-2 & 4-3 (indictments of Eiseman and Carsey).) According to the press release, all four incidents "involved unlawful stops and detentions of civilians in Northern Manhattan, which sometimes led to unlawful searches as well. Where the searches led to the recovery of contraband, Eiseman ordered his subordinates to falsify their police paperwork in order to make the stops and searches appear legitimate." (Press Release

---

[4] N.Y. Penal Law § 265.03(3) provides, "A person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm" unless "such possession takes place in such person's home or place of business." N.Y. Penal Law § 221.15 provides, "A person is guilty of criminal possession of marihuana in the fourth degree when he knowingly and unlawfully possesses one or more preparations, compounds, mixtures or substances containing marihuana . . . of an aggregate weight of more than two ounces."

at 1.)  In June 2011, Eiseman pled guilty to perjury and falsifying police records.  (Compl. ¶ 98(b) (citing *People v. Eiseman*, Indictment No. 2999/2010 (Sup. Ct. N.Y. Cnty.).)

On October 15, 2010, the prosecutor who tried the case against Plaintiff sent a letter to Plaintiff's counsel and the court notifying them that Eiseman and Carsey had been indicted and attaching copies of the indictments.  (Compl. ¶ 57; *see also id.*, Ex. E, ECF No. 4-5 (letter dated Oct. 15, 2010).)

In 2011, Plaintiff filed a motion to set aside the verdict against him pursuant to New York Criminal Procedure Law § 330.30(3) on the grounds that the indictments of Eiseman and Carsey were newly discovered evidence that, if known at the time of trial, would have changed the result. (Compl. ¶ 73; *see also id.*, Ex. G at 2.[5])  The trial court denied the motion without a hearing, finding that the claims against Eiseman and Carsey were not substantiated until after a verdict was entered against Plaintiff.  (Compl. ¶ 78; *People v. Ulerio*, 27 N.Y.S.3d 558, 559 (App. Div. 1st Dep't 2016).)

On November 9, 2012, Plaintiff was sentenced to five years' imprisonment, to be followed by three years of post-release supervision.  (Compl. ¶ 84.)  Plaintiff appealed his conviction on the grounds that, among other things, the trial court erred in denying his motion to set aside the verdict. (*Id.* ¶ 85.)  The Appellate Division remanded the case for a hearing to further develop the factual basis for the denial of the motion.  (*Id.* ¶ 86.)  At the hearing, Plaintiff would be permitted to explore "what information, if any, was shared between the corruption unit and the assigned prosecutor before [Plaintiff's] trial and whether, prior to [December 2008, when the investigation against Eiseman began], the People had specific information that [Eiseman] and [Carsey] had

---

[5] Plaintiff's complaint alleges that the motion was made "[o]n October 31, 2011," (Compl. ¶ 73), but the April 4, 2017 letter attached to the complaint states that the motion was made "[o]n or about November 18, 2011." (*Id.*, Ex. G at 2.)

engaged in misconduct which [the District Attorney's Office] should have disclosed." (*Id.* ¶ 88 (quoting *Ulerio*, 27 N.Y.S.3d at 630).)

In preparation for the hearing, the District Attorney's Office reviewed its files related to Plaintiff's case and the indictments of Eiseman and Carsey. (*Id.* ¶ 89.) Plaintiff alleges that this review revealed that the District Attorney's Office had information relating to Eiseman's bad acts prior to the suppression hearing and trial, but did not disclose the information to Plaintiff or his counsel.[6] (*Id.* ¶ 90.)

In an April 4, 2017 letter to the trial court, the District Attorney's Office stated that its review of Plaintiff's case "revealed that a post-arrest interview of the man arrested with [Plaintiff] corroborated the officers' account of the stop, specifically with respect to the detectable odor of marijuana emanating from defendant's vehicle, and that the assistant district attorney who ultimately tried the case had found . . . Perez[] to be credible." (Apr. 4, 2017 Letter at 5–6.) The letter further stated that "in the course of their investigation of Sergeant Eiseman and Police Officer Carsey, the Official Corruption Unit [of the District Attorney's Office] did not learn of misconduct by Police Officer Perez or Police Officer Paulino, nor of any allegations of misconduct related to [Plaintiff's] case." (*Id.* at 6.)

Nonetheless, the April 4, 2017 letter concluded that, "with the benefit of 20-20 hindsight and taking note of the unusual—almost unique—defense strategy at trial," which made an "affirmative point of lauding the integrity of the police officers," the District Attorney's Office believed that "fundamental fairness warrants vacating defendant's conviction." (*Id.* at 7.) The

---

[6] Plaintiff's allegation that the District Attorney's Office was aware of allegations of misconduct concerning Eiseman and Carsey at the time of the suppression hearing appears to be contradicted by the April 4, 2017 letter. The earliest date referenced in the letter regarding the District Attorney's Office's knowledge of allegations against Eiseman is August 2, 2008—after the March 21, 2008 suppression hearing. (*See* Apr. 4, 2017 Letter at 4.) The letter also stated, "It was not until May 2009[] that the first incident with specific allegations of misconduct by Police Officer Carsey came to light." (*Id.* at 5.)

District Attorney's Office explained that, had Plaintiff's defense counsel known of the allegations against Eiseman at the time of trial, he "may well have pursued a different tactic in defending his client" and should have had the opportunity to do so. (*Id.*) Accordingly, the District Attorney's Office "consented in the interests of justice to granting [Plaintiff's] motion" to set aside the verdict. (*Id.* at 1.) On April 12, 2017, Plaintiff's conviction was vacated. (Compl. ¶ 114.[7])

## II.    LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal quotation marks and citation omitted). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a Rule 12(b)(6) motion, the court draws all reasonable inferences in the plaintiff's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp.*, *PLC*, 709 F.3d 109, 119 (2d Cir. 2013).

## III.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF

In this action, Plaintiff brings a *Monell* claim against the City, and claims against the Officer Defendants for unlawful search and seizure, malicious prosecution, failure to intercede,

---

[7] An earlier paragraph in the complaint alleges that the conviction was vacated on April 4, 2017, but that appears to be an error. (Compl. ¶ 91.) The Certification of Disposition attached to the complaint indicates the vacatur occurred on April 12, 2017. (*Id.* Ex. A, ECF No. 4-1.)

failure to disclose exculpatory evidence, supervisory liability, and violation of Plaintiff's civil rights.[8] (*See* Compl.) All of Plaintiff's claims fail.

### A. Unlawful Search and Seizure

"Section 1983 actions in New York are subject to a three-year statute of limitations, running from the time a 'plaintiff knows or has reason to know of the injury' giving rise to the claim." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (citations omitted). "[A] cause of action for unlawful search and seizure generally accrues from the date of the unlawful search." *D'Angelo v. Kirschner*, 288 F. App'x 724, 726 (2d Cir. 2008).

Here, Plaintiff alleges that his van was unlawfully searched on October 10, 2007. (Compl. ¶ 16.) Plaintiff's complaint was filed on March 9, 2018. (*See id.*) Plaintiff argues that the statute of limitations should be tolled because "it was only on April 4, 2017 that the [D]istrict [A]ttorney's [O]ffice revealed that it had knowledge of the bad acts of Sergeant Eiseman prior to the commencement of the trial." (Opp'n at 9.) However, in determining whether equitable tolling is warranted, "the relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004). Plaintiff's unlawful search claim is based on the search itself, which he was aware of on the date that it occurred. Plaintiff's subsequent discovery of "facts putatively concealed by the defendants" that "might have strengthened [Plaintiff's] case by corroborating [his] story" does not "sufficiently

---

[8] Although Plaintiff's prayer for relief seeks damages from all Defendants on his claims for supervisory liability and exculpatory evidence claims, (*see* Compl. at 33), the factual allegations in the complaint supporting those claims only discuss Eiseman. (*Id.* ¶¶ 127–31, 134–35.)

justify . . . not pursuing [his] cause of action [so] as to merit equitable tolling." *Pearl v. City of Long Beach*, 296 F.3d 76, 84 (2d Cir. 2002). Plaintiff's unlawful search claim is time-barred.[9]

Even if Plaintiff's unlawful search claim were not time-barred, it fails to state a claim. "The 'automobile exception' permits law enforcement officers to search without a warrant 'a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband.'" *United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017) (quoting *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010). "Consistent with the automobile exception, it is well settled that the odor of marijuana provides probable cause to search the entirety of a vehicle, including its contents." *Hardy v. Baird*, No. 13 Civ. 7402 (NSR), 2016 WL 2745852, at *7 (S.D.N.Y. May 10, 2016) (collecting cases). Additionally, if "[f]rom their position outside the defendant's vehicle, and prior to conducting any search, the police observe[] a bag containing a substance that appear[s] to be marijuana inside the [vehicle], . . . the police ha[ve] probable cause" to search the "defendant's entire [vehicle]." *United States v. Cuevas*, No. 15 Crim. 846 (PKC), 2016 WL 2766657, at *3 (S.D.N.Y. May 12, 2016) (quoting *Navas*, 597 F.3d at 497 (internal quotation marks omitted)).

Here, Plaintiff alleges that prior to the search, "Officer Perez claimed to smell the 'strong smell of marijuana coming from the van's open passenger window.'" (Compl. ¶ 27.) Plaintiff also alleges that Perez "claimed that he could see . . . a 'whole bunch' of . . . apple baggies" inside a plastic bag on the floor of the van. (*Id.* ¶¶ 29–31.) Plaintiff further alleges that "Officer Perez

---

[9] Plaintiff's unlawful search claim may also be barred by the doctrine of collateral estoppel. "Settled authority establishes that where . . . a state court has determined that the . . . warrantless [search or] seizure was supported by probable cause, the defendant may not relitigate that determination in a federal [§] 1983 action." *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 426 (S.D.N.Y. 2012) (quoting *DeFranco v. Town of Irondequoit*, No. 06 Civ. 6442 (MWP), 2009 WL 2957813, at *4 (W.D.N.Y. Sept. 11, 2009) (alteration and omission in original). However, because neither party has stated the basis for the state court's denial of Plaintiff's suppression motion, and neither party has raised the issue of whether collateral estoppel applies, this Court need not rely on that doctrine.

claimed he could see a box of Trix cereal lying in the back of the van . . . and part of a zip-lock bag filed with 'green type marijuana' stuck out of the box." (*Id.* ¶ 33.) The "odor of marijuana," *Hardy*, 2016 WL 2745852, at *7, and "observ[ation] of a bag containing a substance that appear[ed] to be marijuana" provided probable cause to search Plaintiff's van. *Cuevas*, 2016 WL 2766657, at *3.

At oral argument, Plaintiff's counsel claimed that Perez "lied" when he claimed that he smelled marijuana and saw marijuana and "apple baggies" in the van. (Oral Arg. Tr. at 53:22–54:10.)   However, this Court "cannot consider allegations raised for the first time at oral argument." *Kiryas Joel Alliance*, 2011 WL 5995075, at *8.   Because the Complaint does not allege that Perez lied about smelling and seeing the marijuana, Plaintiff has not alleged facts sufficient to support an inference that the search was unlawful.

### B. *Monell* Claim

"Under the standards of *Monell v. Department of Social Services*, a municipality can be held liable under [§] 1983 if the deprivation of the plaintiff's [constitutional] rights . . . is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658, 690–91 (1978)).   However, "if there is no constitutional violation by a governmental actor, a city cannot be liable 'regardless of whether the officers acted pursuant to a municipal policy or custom.'" *Fappiano v. City of New York*, 640 F. App'x 115, 121 (2d Cir. 2016) (quoting *Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008)).

Here, Plaintiff alleges that the City has several "policies, practices, and/or customs" that led the Officer Defendants to feel "empowered to arrest [P]laintiff[] without probable cause and then fabricate and swear to a false story to cover up their blatant violations of [Plaintiff's]

constitutional rights." (Compl. ¶ 107.) However, Plaintiff's Complaint does not allege facts to support the allegation that Plaintiff was "arrest[ed] . . . without probable cause." (*Id.*) The Complaint alleges that prior to Plaintiff's arrest, Officer Perez claimed that he saw "apple baggies" used for packaging marijuana and a substance that appeared to be marijuana in Plaintiff's van. (*Id.* ¶¶ 29–31, 33.) If Perez observed marijuana in Plaintiff's van, he had probable cause to arrest Plaintiff for possession of marijuana. *See, e.g.*, *Cabral v. City of New York*, 662 F. App'x 11, 12–13 (2d Cir. 2016) (finding plaintiff's arrest "after the seizure of marijuana" from his vehicle was supported by probable cause); *see also United States v. McCall*, No. 06 Crim. 14 (HBS), 2007 WL 1845584, at *10 (W.D.N.Y. June 21, 2007) ("Once the contraband was seen in plain view in the common area of the car, . . . defendant's arrest was justified.") (citing *Maryland v. Pringle*, 540 U.S. 366, 372 (2003)).

Plaintiff also fails to allege any facts to support his conclusory allegation that the Officer Defendants "fabricate[d] . . . a false story." (Compl. ¶ 107.) At oral argument, Plaintiff's counsel asserted that Perez's claims about smelling and seeing the marijuana and seeing the apple baggies were false. (Transcript of Oral Argument dated July 25, 2018 ("Oral Arg. Tr.") at 53:22–54:10.) Plaintiff's counsel also asserted that the statement in the criminal complaint that the van was "double parked" was false, because the van was legally parked. (*Id.* at 34:5–6.) However, none of those assertions appear in the Complaint. This Court "cannot consider allegations raised for the first time at oral argument, because the . . . Complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, No. 11 Civ. 3982 (JSR), 2011 WL 5995075, at *8 (S.D.N.Y. Nov. 29, 2011), *aff'd*, 495 F. App'x 183 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

11

Additionally, for the reasons explained below, Plaintiff has failed to allege that the search of his van or his prosecution violated his constitutional rights. Because Plaintiff has failed to allege an underlying constitutional violation, his *Monell* claim fails "regardless of whether the [O]fficer [Defendants] acted pursuant to a municipal policy or custom."[10] *Fappiano*, 640 F. App'x at 121.

### C. Malicious Prosecution

The elements of a malicious prosecution claim under § 1983 are: "(i) the commencement or continuation of a criminal proceeding against [the plaintiff]; (ii) the termination of the proceeding in her favor; (iii) 'that there was no probable cause for the proceeding'; and (iv) 'that the proceeding was instituted with malice.'" *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)). "[B]ecause lack of probable cause is a necessary element, 'the existence of probable cause is a complete defense to a claim of malicious prosecution.'" *Ziming Shen v. City of New York*, 725 F. App'x 7, 12 (2d Cir. 2018) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)).

Here, Plaintiff acknowledges in his complaint that "police . . . searched his van and found marijuana and a loaded gun," and that he was subsequently prosecuted for "marijuana and gun possession." (Compl. ¶¶ 16–17.) Nevertheless, Plaintiff argues that "[b]ecause [O]fficer Perez['s] testimony was false, there was no probable cause to ask Plaintiff to exit the vehicle and arrest him, making the arrest and search illegal and [P]laintiff's further prosecution malicious." (Opp'n at 11; *see also* Compl. ¶¶ 112–13.) But "[t]he probable cause determination relevant to a malicious

---

[10] Plaintiff has not shown that the Officer Defendants acted pursuant to such a policy or custom here, because they are "low-level municipal employees," and Plaintiff has not alleged facts that would support an inference that "a policy-making official ordered or ratified [the Officer Defendants'] actions—either expressly or tacitly." *Jones*, 691 F.3d at 81 (citation omitted). To the contrary, Plaintiff alleges that both Eiseman and Carsey were indicted and convicted of perjury for conduct similar to the conduct alleged here. (*See* Compl. ¶¶ 57–71; *id.* ¶ 98(b) (discussing Eiseman's and Carsey's indictments and Eiseman's conviction); *see also* Opp'n at 3 ("Eiseman and Carsey . . . were both convicted of perjury.").)

prosecution claim differs from that of a false arrest claim . . . insofar as the existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced . . . , not the time of the preceding warrantless arrest." *Peterson v. Regina*, 935 F. Supp. 2d 628, 642 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).   Additionally, the probable cause determination for malicious prosecution is separate from a determination regarding the legality of a search. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine cannot link [an] unreasonable seizure and search to [a plaintiff's] conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions.").

Here, regardless of the legality of the arrest and search, the evidence found in Plaintiff's van provided probable cause to prosecute Plaintiff, because it "would lead a reasonably prudent person to believe" that Plaintiff possessed marijuana and a weapon. *Mangum*, 2016 WL 4619104, at *7. The existence of probable cause precludes Plaintiff's malicious prosecution claim.[11]

### D.  Failure To Intercede

"'An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know' of a constitutional violation, provided that she has 'a realistic opportunity to intervene to prevent the harm from occurring.'" *Sullivan v. City of New York*, No. 17 Civ. 3779 (KPF), 2018 WL 3368706, at *11 (S.D.N.Y. July

---

[11] Plaintiff's malicious prosecution claim also fails because he has not alleged the "termination of the proceeding in [his] favor." *Mitchell*, 841 F.3d at 79. Although the Certificate of Disposition states that the vacatur of the conviction is a "termination of the criminal action in favor of the accused," (Compl., Ex. A), that is not dispositive. "[P]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate that the accused is not guilty." *Lanning v. City of Glens Falls*, 908 F.3d 19, 26 (2d Cir. 2018) (citation omitted). Here, Plaintiff acknowledges in his opposition to the motion to dismiss that there were "16 ounces of marijuana" in his van, (Opp'n at 4), and Plaintiff does not allege that the Officer Defendants lied about finding a gun in the van. Thus, Plaintiff has not shown that the vacatur of his conviction "indicate[s] [his] innocence." *Murphy*, 118 F.3d at 948.

10, 2018) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). However, "[w]here the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable." *Sanabria v. Detective Shawn Tezlof*, No. 11 Civ. 6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (citation omitted).

Here, Plaintiff's failure to intercede claim does not identify the constitutional violations it is premised on, and it is unclear which of the Officer Defendants that Plaintiff claims were direct participants in the violations. (*See* Compl. ¶¶ 119–22.) Plaintiff merely alleges that the "[D]efendants had an affirmative duty to intercede when [P]laintiff's constitutional rights were being violated in [the Officer] [D]efendants' presence." (*Id.* ¶ 120.) "A conclusory allegation of this type does not plausibly allege that [the Defendants were] not directly involved in causing the constitutional harm or that th[e] officer[s] had an opportunity to intervene." *Corso v. City of New York*, No. 17 Civ. 6096 (NRB), 2018 WL 4538899, at *12 (S.D.N.Y. Sept. 20, 2018) (dismissing claim where plaintiff alleged defendants "observed [unconstitutional] conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene").

Moreover, "[t]o state a claim against each individually named defendant, Plaintiff must include allegations as to that defendant." *Tieman v. City of Newburgh*, No. 13 Civ. 4178 (KMK), 2015 WL 1379652, at *25 (S.D.N.Y. Mar. 26, 2015); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (finding that "[b]y lumping all the defendants together . . . and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy" Rule 8 of the Federal Rules of Civil Procedure). Because Plaintiff's failure to intercede claim does not distinguish between the Officer Defendants, Plaintiff has failed to state a viable claim against

any of them.[12]   To the extent Plaintiff's failure to intercede claim is alleged against the City, it is duplicative of his *Monell* claim, which fails for the reasons explained above.  (*See* Compl. ¶ 95 (alleging that City had a "custom[], practice[] or procedure[]" of "failing to intervene to prevent [unconstitutional] practices").)

### E.  Failure To Disclose Exculpatory Evidence

"Police officers can be held liable for *Brady* due process violations under § 1983 if they withhold exculpatory evidence from prosecutors." *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)) (additional citation omitted).  But "[t]he police satisfy their obligations under *Brady* when they turn exculpatory evidence over to the prosecutors." *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992).  Here, Plaintiff identifies the "material which was not disclosed" as "Sergeant Eiseman's perjury, police misconduct, and prior bad acts." (Compl. ¶ 130.)  Plaintiff alleges in his complaint that "the district attorney had knowledge of the bad acts of Sergeant Eiseman prior to the commencement of [Plaintiff's] hearing and trial." (*Id.* ¶ 90.)  Because the prosecutors had knowledge of the relevant evidence, Plaintiff cannot show that the Officer Defendants violated their obligations under *Brady*.

To the extent that Plaintiff's *Brady* claim is alleged against the City, it is analyzed under *Monell*.  Because Plaintiff has not alleged that any of the Officer Defendants violated *Brady* or that the City had any "custom, policy, or usage" relating to *Brady* material, Plaintiff's *Brady* claim fails. *Jones*, 691 F.3d at 80.

### F.  Supervisory Liability

"A viable § 1983 suit based on supervisory liability requires personal involvement by the defendant-supervisor." *Bennings v. Kearney*, 2 F. App'x 218, 220 (2d Cir. 2001).  "Personal

---

[12] In any event, Plaintiff's failure to intercede claim as it relates to his unlawful search and seizure claim is similarly barred by the statute of limitations, as previously discussed.

involvement can be established by showing that . . . the defendant participated directly in the alleged constitutional violation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (citation omitted).   A supervisor may also be liable if he "set in motion a series of acts by others . . . which he knew or reasonably should have known[] would cause others to inflict the constitutional injury." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014) (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (alteration in original) (internal quotation marks omitted).

Here, Plaintiff alleges that Eiseman is liable for his own actions because he "had a supervisory role and participated in Plaintiff's underlying arrest."   (Compl. ¶ 134.)   But, as discussed above, Plaintiff has not alleged that the arrest was a violation of his constitutional rights. *See* § III.D, *supra*.   Plaintiff also alleges that Eiseman "set in motion a series of acts by his fellow defendant subordinates that he knew or reasonably should have known would cause the subordinate defendant officers to deprive the plaintiff of his federal and constitutional rights." (Compl. ¶ 135.)   However, this type of conclusory allegation, which simply "parrots [one of the] evidentiary routes for supervisory liability" without "alleg[ing] a single fact relevant to [its] legal conclusion[], . . . does not meet the plausibility pleading standard." *Dotson v. Farrugia*, No. 11 Civ. 1126 (PAE), 2012 WL 996997, at *6 (S.D.N.Y. Mar. 26, 2012) (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

### G. Civil Rights Violations

In addition to his other claims, Plaintiff's complaint includes a claim for unspecified civil rights violations.   It incorporates all of the previous paragraphs of the complaint and alleges that "[a]ll of the aforementioned acts deprived Plainiff [sic] of the rights, privileges, and immunities guaranteed . . . by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments . . . ."   (Compl.

¶ 138.)   However, such "general allegations, without supporting facts other than a clause incorporating an entire complaint by reference, are insufficient to withstand even a motion to dismiss because they do not give 'fair notice of what the claim is and the grounds upon which it rests.'" *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268–69 (S.D.N.Y. 2010) (quoting *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006)) (additional internal quotation marks and internal citation omitted) (dismissing claim with substantially identical language).

## IV.    CONCLUSION

Defendants' motions to dismiss, (ECF Nos. 21 & 37), are GRANTED.[13]

Dated: New York, New York
       December 20, 2018

                                        SO ORDERED.

                                        *George B. Daniels*
                                        GEORGE B. DANIELS
                                        United States District Judge

---

[13] In his opposition to Defendants' motions, Plaintiff requests leave to amend if the motions are granted. (Opp'n at 20.)  Plaintiff may seek leave to file an amended complaint by letter application with a proposed amended complaint within thirty days, if such amendment would not be futile.